**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

ELDRIDGE HAWKINS and CECILE D. PORTILLA,

    Plaintiffs,

    v.

CHIEF JUSTICE STUART RABNER *et al.*,

    Defendants.

</td>
<td>

No. 26cv2303 (EP) (MAH)

**MEMORANDUM ORDER**

</td>
</tr>
</table>

**PADIN, District Judge.**

Plaintiffs Eldridge Hawkins and Cecile Portilla are New Jersey attorneys who allege that the New Jersey Judiciary and the Office of Attorney Ethics ("OAE") are using attorney-competency proceedings to retaliate against them for criticizing judges, the OAE, and the Judiciary's eCourts system.[1]  Plaintiffs sue two groups of Defendants:

- Members of the New Jersey State Judiciary, including Chief Justice Stuart J. Rabner, Justice Anne M. Patterson, Justice Fabiana Pierre-Louis, Justice Rachel Wainer Apter, Justice Douglas M. Fasciale, Justice John Jay Hoffman, Justice Michael Noriega, the Hon. Avion Benjamin, A.J.S.C., the Hon. Richard T. Sules, J.S.C., OAE Director Johanna Barba Jones, and Deputy Ethics Counsel Daniel Davis (collectively, the "State Judiciary Defendants"); and

- The Essex County Bar Association ("ECBA") and its president, Carmen Diaz, (together, the "ECBA Defendants").

---

[1] D.E. 21 ("Second Amended Complaint" or "SAC").

Since filing this action in March 2026, Plaintiffs have submitted numerous motions for emergency injunctive relief, including: (1) Hawkins's motion for a preliminary injunction;[2] (2) Hawkins's motion for a temporary restraining order;[3] and (3) Portilla's motion for a temporary restraining order, an order to show cause, and a preliminary injunction.[4] Although the Motions differ in detail, each asks this Court to halt pending New Jersey attorney-competency proceedings, including petitions for temporary suspension and directives requiring medical records and examinations. Plaintiffs principally contend that New Jersey Court Rule 1:20-12(b) and the manner in which the OAE has invoked it, violate federal law.

The State Judiciary Defendants oppose the Motions,[5] and Plaintiffs have replied.[6] And following an order from this Court, the State Judiciary Defendants also filed a sur-reply.[7]

The Court decides the Motions without oral argument.[8] For the reasons explained below, the Court must abstain from interfering with the pending attorney-disciplinary proceedings, and therefore, it will **DENY** the Motions.

---

[2] D.E. 9-3 ("Hawkins PI Motion" or "Hawkins PI Mot."). The Notice of Motion is filed at D.E. 9.

[3] D.E. 50-3 ("Hawkins TRO"). The Notice of Motion is filed at D.E. 50.

[4] D.E. 80 ("Portilla TRO"). The Notice of Motion is filed at D.E. 75. The Court refers to the Hawkins PI Motion, the Hawkins TRO, and the Portilla TRO collectively as "the Motions."

[5] D.Es. 57 ("Hawkins Opposition" or "Hawkins Opp'n") & 87 ("Portilla Opposition" or "Portilla Opp'n").

[6] D.Es. 64 ("Hawkins Reply") & 92 ("Portilla Reply").

[7] D.E. 72 ("Sur-Reply").

[8] *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b).

## I.       BACKGROUND

### A.       Factual Background[9]

#### 1.       General background

This federal civil rights action challenges separate state inquiries into whether Hawkins and Portilla remain competent to practice law.  In sum and substance, Plaintiffs allege that Defendants are using Rule 1:20-12(b) to compel medical records and examinations in retaliation for Plaintiffs' criticism of judges, the OAE,[10] alleged eCourts irregularities, and alleged misconduct in state criminal matters.  The operative pleading—the Second Amended Complaint— asserts claims under several federal statutes and state law.  Plaintiffs seek damages, declaratory and injunctive relief, structural reforms, and $2 billion in damages.  *See* SAC.

The Motions present a narrower dispute concerning the ongoing state disciplinary actions brought against Plaintiffs.  The Court therefore recounts only the facts necessary to decide whether it may enjoin those pending state proceedings.

#### 2.       Facts relevant to Hawkins

Following a series of complaints to the New Jersey State Judiciary, on August 17, 2025, Hawkins wrote a letter to the New Jersey State Judiciary "exposing judicial misconduct, systemic discrimination, and unconstitutional conduct by the New Jersey Supreme Court."  Hawkins TRO

---

[9] As discussed in more depth *infra*, the Second Amended Complaint and the Motions are sprawling and at points difficult to follow.  The Court does its best to succinctly summarize the issues presented by Plaintiffs, and focuses on the facts relevant to resolving the Motions.

[10] The New Jersey Judiciary describes the OAE as "the investigative and prosecutorial arm of the Supreme Court of New Jersey in discharging the Court's constitutional responsibility to supervise and discipline New Jersey attorneys."  *See* New Jersey Courts, *Find Attorney Discipline Cases*, [https://perma.cc/XH26-TLEN] (last visited July 17, 2026).

at 7 (citations omitted).    According to Hawkins, the letter is protected speech under the First Amendment.[11]  *Id.* at 7.

On September 12, 2025, the OAE informed Hawkins that it had received a referral concerning his conduct in two Essex County matters.  D.E. 54-1 at 1–3 (the "September 12 Letter").[12]  The letter reported that, in a criminal matter, Hawkins misunderstood pretrial-detention procedures, ignored a client's wish to plead guilty, missed a status conference, and repeatedly cited inapplicable authority.  *Id.* at 1–2.  It also reported that in a civil matter, Hawkins filed a motion that cited no relevant facts or law and was at times incoherent and inappropriate.  *Id.* at 1.  The OAE stated that this reported conduct, together with Hawkins's letter expressing his belief that judges were conspiring against him, raised questions about his ability to practice law and warranted an investigation under the New Jersey Supreme Court's rules.  *Id.* at 2.

Hawkins disputes both the OAE's authority and the factual account in the September 12 Letter.  Hawkins TRO at 7–8; Hawkins Reply at 1–3.  He emphasizes that the OAE has produced no client complaint, that several clients support him, and that he did not disregard a client's desire to plead guilty.  Hawkins Reply at 1–3.

On October 21, 2025, Defendant Diaz signed a petition asserting that Hawkins suffered from "health problems that significantly impair his ability to competently practice law."  TRO

---

[11] Hawkins's long record of public service and legal advocacy is not in dispute.  He has practiced law for more than five decades, served in the New Jersey Legislature and chaired the Assembly Judiciary Committee, helped author New Jersey's Criminal Code, and founded the Garden State Bar Association.  *See* D.E. 50-1 ¶¶ 4–7; Hawkins Reply at 14. The Court recognizes those significant contributions while addressing the narrower legal questions now before it.

[12] In materials submitted *ex parte* and under seal, the State Judiciary Defendants have confirmed their initial representation that the OAE received a single referral before opening its investigation. Having reviewed those materials, the Court is satisfied that the OAE in fact received a referral, and that it provided a good-faith basis for initiating its investigation.  The Court does not rely on or disclose the substance of the confidential communications beyond that conclusion.

Mot. at 8; D.E. 9-16 ("Diaz Certification").  According to Hawkins, Diaz has never met him and has no factual basis for her statements.  TRO Mot. at 8.  Hawkins claims that Diaz's petition was solicited by "John Doe," whom Hawkins believes to be a justice or ethics counsel seeking to create a pretext for removing him from practice.  *Id.* at 8.

Hawkins initially complied with the OAE's investigation, including sitting for an interview on December 4, 2025.  D.E. 9-20 at 2.  On January 26, 2026, the Disciplinary Review Board ("DRB")[13] granted the OAE's application for an order requiring Hawkins to submit to an independent medical examination and provide records for that examination.  *Id.* at 4 (citing D.E. 50-6 at 2–3).  In a February 24, 2026 letter, the OAE directed Hawkins to identify his neurological and psychiatric providers and produce the related medical records.  D.E. 9-20 at 1–2.  The OAE advised Hawkins that the examination could not be scheduled without those records and warned him that it would seek a temporary suspension if he did not provide those records by March 6, 2026.  *Id.* at 2.  Hawkins did not provide the requested records, and the OAE thereafter petitioned the Supreme Court of New Jersey for his temporary suspension.  D.E. 50-5; TRO Opp'n at 4.  That petition is still pending.

Hawkins asks this Court to enjoin the State Judiciary Defendants from: (1) enforcing the pending petition for his temporary suspension; (2) enforcing the DRB's January 26, 2026 order requiring an examination and medical records; (3) imposing disciplinary consequences for his refusal to comply; and (4) otherwise altering the status quo.  *See* Hawkins TRO.

---

[13] The Disciplinary Review Board "is part of the New Jersey Supreme Court's attorney discipline process. It reviews all attorney misconduct cases prosecuted by the [OAE].  After it receives the OAE's recommendation for discipline, the DRB reviews the entire record of the case.  It then makes its own recommendation in the case." *See* New Jersey Courts, *Disciplinary Review Board*, [https://perma.cc/XND4-LSUA] (last visited July 17, 2026).

5

3.      *Facts relevant to Portilla*

Portilla likewise claims that the OAE is investigating her competence in retaliation for protected advocacy.

On May 31, 2025, Portilla filed motions with the New Jersey Supreme Court accusing the State of negligence and deliberate indifference in failing to protect eCourts and, as a result of this failure, denying her clients access to the courts and due process.  Portilla TRO at 3.  She maintains that the filings documented interference and other problems with eCourts caused by coordinated state action.  *Id.* at 4.

On June 10, 2025, the OAE informed Portilla that it had received a referral concerning motions she filed with the New Jersey Supreme Court in two matters.  D.E. 75, Ex. C.

On August 18, 2025, the OAE advised Hawkins, then acting as Portilla's co-counsel, that it had opened an investigation "to determine whether or not Ms. Portilla may face medical circumstances which impair her ability to practice law" based on apparent "paranoia" expressed by Portilla.  D.E. 75, Ex. D.

On December 2, 2025, the OAE petitioned the DRB for an order requiring Portilla to submit to a medical examination and provide ten years of psychiatric and medical records. D.E. 75, Ex. J.  The DRB granted the request on January 5, 2026.  *Id.*, Ex. M.  The order stated that, if Portilla did not comply, the OAE would promptly seek her temporary suspension and the appointment of counsel.  *Id.*

Portilla did not comply.  On March 19, 2026, she wrote to the Honorable Avion Benjamin, A.J.S.C., that she was "unequivocally exercising [her] constitutional and statutory right to refuse any counsel selected or imposed" by the OAE.  D.E. 75, Ex. R.  She also maintained that the examination order violated the New Jersey Constitution and was therefore void.  *Id.*

On May 4, 2026, the OAE filed a petition with the New Jersey Supreme Court seeking the temporary suspension of Portilla's license.  D.E. 75, Ex. A.

Portilla asks this Court to enjoin the State Judiciary Defendants from:  (1) enforcing or acting upon the OAE's May 4, 2026 petition seeking her temporary suspension; (2) enforcing the DRB's January 5, 2026 order requiring her to submit to an expedited medical examination; (3) requiring her to produce psychiatric, psychological, or medical records, including the ten-year HIPAA release previously demanded; (4) imposing disciplinary consequences based on her refusal to undergo the examination or produce those records; and (5) otherwise altering the status quo before the Court resolves her request for preliminary injunctive relief.  *See* Portilla TRO.

By order dated July 9, 2026, and filed July 14, 2026, the New Jersey Supreme Court temporarily suspended Portilla from the practice of law.  *In re Cecile Delrose Portilla*, No. M-974 Sept. Term 2025, 2026 WL 2023319, at *1 (N.J. July 14, 2026) (order).[14]  That development partially moots Portilla's TRO—the Court can no longer prevent the OAE from pursuing its May 4 suspension petition, prevent the New Jersey Supreme Court from entering a suspension order, or preserve her pre-suspension status.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (explaining that a case becomes moot when it is impossible for a court to grant any effectual relief).

Portilla's remaining requests, however, are not moot.  After receiving the suspension order, Portilla asked this Court to stay or vacate it and to hold the State Judiciary Defendants in contempt. D.E. 106; *see also* D.Es. 108 & 109.  Because the relief she now requests would, if available, have

---

[14] A court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

a practical effect, a live controversy remains.  Whether this Court may grant that relief is a separate question, which the Court addresses below.[15]

### B.    Procedural History

The procedural history of this case is extensive despite its relatively young age.  Plaintiffs filed this action on March 4, 2026.  They filed an amended complaint and Hawkins's motion for a preliminary injunction, D.E. 9, on March 10, 2026.

On April 6, 2026, Hawkins filed a TRO application.  D.E. 35.  The Court administratively terminated it for failure to comply with the Local Civil Rules and directed the parties to confer about a temporary stay of the state proceedings.

When the parties could not resolve the issue, the Court directed Hawkins to refile the TRO application and set a briefing schedule.  Hawkins filed the operative TRO, D.E. 50, on April 15, 2026.  The State Judiciary Defendants opposed Hawkins's application, D.E. 57, and Hawkins

---

[15] Across these recent filings, Portilla contends that her suspension violated D.E. 78.  Portilla overreads that Order.

D.E. 78 directed the State Judiciary Defendants only to "temporarily pause their request for Ms. Portilla to produce any psychiatric or psychological records" until the Court decided her TRO motion.  It did not stay Portilla's disciplinary proceeding, enjoin prosecution of the already-filed May 4 suspension petition, or prohibit the New Jersey Supreme Court from adjudicating that petition.  Indeed, the May 4 suspension petition was already pending when the Court entered that limited directive on May 28, and the Order did not require its withdrawal or suspension.  Nor does Portilla identify any post-D.E. 78 demand that she immediately produce psychiatric or psychological records during the temporary pause.

Civil contempt requires clear and convincing evidence that a party, with knowledge of a valid and sufficiently specific order, disobeyed that order.  *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).  Because D.E. 78 did not prohibit the State Judiciary Defendants from continuing to litigate the suspension petition, Portilla's suspension, standing alone, does not establish disobedience of the Order.

The Court does note, however, that the State Judiciary Defendants have complicated the adjudication of this action by both refusing to pause the underlying attorney-disciplinary matters while simultaneously seeking multiple extensions of time to respond to Plaintiffs' requests for emergent relief.

replied, D.E. 64. Because the reply raised new arguments concerning bad faith, harassment, and extraordinary circumstances, the Court ordered the State Judiciary Defendants to file a sur-reply. D.E. 72.

Portilla filed her TRO, order-to-show-cause, and preliminary injunction motion on May 27, 2026. D.E. 75. She later filed a compliant amended brief, D.E. 80; the State Judiciary Defendants opposed, D.E. 87; and Portilla replied, D.E. 92.

## II.    LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The status quo is "defined as the last, peaceable, noncontested status of the parties." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)).

> To obtain a preliminary injunction, the moving party must show:
>
> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transam. Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).

The movant bears the burden of establishing the first two factors, which are considered the "most critical" factors. *Id.* at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

The movant's burden is demanding. A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948 (2d ed. 1995)).

A court may consider affidavits and other less formal evidence when deciding a request for preliminary relief. *See Kos Pharms.*, 369 F.3d at 718–19. But the movant must nevertheless make a clear showing on the two gateway factors. *Reilly*, 858 F.3d at 179.

## III.    DISCUSSION

To satisfy the first prong of the preliminary injunction inquiry, a plaintiff must demonstrate a likelihood of success on the merits of the action. *See Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). The Third Circuit has equated a plaintiff's burden to proving a "'prima facie case,' not a 'certainty she'll win.'" *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001)).

Plaintiffs' allegations are serious. In no uncertain terms, they accuse the OAE of initiating competency investigations to retaliate against them for protected criticism. The Court does not take those allegations lightly. Putting aside whether the OAE will ultimately establish that either Plaintiff lacks capacity, whether every step of the state processes were proper, or whether

10

Plaintiffs' constitutional objections have merit, the Court must first determine whether it can even enjoin the pending state attorney-competency proceedings before those issues are resolved through the state process.

Pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), the Court may not. Plaintiffs' requested relief would require the Court to halt ongoing proceedings conducted under the New Jersey Supreme Court's attorney-disciplinary system, which the Court cannot do. Because those proceedings satisfy *Younger*'s requirements, the Court must abstain unless Plaintiffs establish bad faith, harassment, or extraordinary circumstances. And as explained below, they have not. Plaintiffs therefore cannot establish a likelihood of success, and the Motions fail at the first gateway factor.

### A.    *Younger* Requires Abstention

*Younger* abstention "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 96 (3d Cir. 2011) (quoting *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992)). Under *Younger*, district courts are required to abstain from exercising jurisdiction over a claim where the resolution of that claim in federal court "would offend principles of comity by interfering with an ongoing state proceeding." *Id.* at 96–97 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010)). "The notion of 'comity' includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (quoting *Younger*, 401 U.S. at 44).

The Court's *Younger* analysis proceeds in two steps. *First*, the Court asks whether the state matter falls within one of three "exceptional categories" of parallel actions: state criminal prosecutions, certain civil-enforcement proceedings, or civil proceedings involving orders uniquely in furtherance of a state court's judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013). *Second*, the Court determines whether the state proceeding is ongoing and judicial in nature, implicates an important state interest, and affords the plaintiff an adequate opportunity to raise federal claims. *Middlesex Cnty.*, 457 U.S. at 432. If the requirements of *Younger* are met, the Court must abstain unless Plaintiffs establish bad faith, harassment, or extraordinary circumstances. *Id.* at 435.

As noted above, the Court must first resolve the parties' dispute as to whether attorney disciplinary matters are even within *Younger*'s ambit—*i.e.*, whether they fall within one of the three exceptional categories of cases. That question has been answered many times: attorney-discipline matters fall within the narrow class of proceedings to which *Younger* may apply. *Middlesex Cnty.*, 457 U.S. at 433–34; *Kelly v. Swartz*, Nos. 21-3198 & 22-2079, 2023 WL 3018282, at *3 (3d Cir. Apr. 20, 2023); *Abbott v. Mette*, No. 21-1804, 2021 WL 5906146, at *2 (3d Cir. Dec. 14, 2021).

Accordingly, *Younger* abstention is appropriate if the attorney-disciplinary matters brought against Plaintiffs are: (1) ongoing state proceedings that are judicial in nature, (2) that implicate important state interests, and (3) provide an adequate opportunity to raise constitutional challenges. *Middlesex Cnty.*, 457 U.S. at 432. Here, all three are unquestionably met.

*First*, both Plaintiffs face ongoing state proceedings that are judicial in nature, and have since they commenced this action. New Jersey's OAE investigations are part of the Supreme Court of New Jersey's attorney-discipline system. *Cresci v. BCB Cmty. Bank*, 728 F. App'x 145, 148–

12

49 (3d Cir. 2018).  Indeed, a disciplinary proceeding is judicial from its inception when an arm of the state supreme court investigates a matter that the court ultimately adjudicates.  *Middlesex Cnty.*, 457 U.S. at 433–34; *Abbott*, 2021 WL 5906146, at *2–3.

Nevertheless, Plaintiffs repeatedly argue that the ongoing proceedings are not "judicial in nature."  TRO Reply at 7–8; Portilla Reply at 6.  They are wrong.[16]  "It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as 'judicial in nature.'"  *Middlesex Cnty.*, 457 U.S. at 433–34.  New Jersey's Constitution vests in New Jersey's Supreme Court the authority to enforce professional discipline among members of the bar, *id.* at 433 (citing N.J. Const., Art. 6, § 2, ¶ 3), and the Supreme Court of New Jersey recognizes the OAE "as the arm of the court in performing the function of receiving and investigating complaints and holding hearings," *id.* (first citing Rule 1:20-2; then citing *In re Logan*, 70 N.J. 222, 358 (1976)); *see also Abbott*, 2021 WL 327375, at *5 (rejecting the argument that attorney discipline matters are not judicial in nature because they involve administrative proceedings).  Plaintiffs' arguments to the contrary—primarily that this action is distinguishable on the grounds that the disciplinary actions here are retaliatory in nature—improperly conflate different parts of the Court's inquiry.  Their claim that OAE and/or DRB officials acted without authority or for retaliatory reasons may bear

---

[16] Plaintiffs consistently characterize the DRB proceedings as administrative in nature.  *See, e.g.*, TRO Reply at 8 ("A compelled psychiatric exam signed by a staff attorney is not a judicial function; it is an ultra vires administrative act.").

Rhetoric aside, that argument improperly isolates the examination orders from the proceedings in which they were issued.  The orders are captioned as orders of the Supreme Court of New Jersey, Disciplinary Review Board; they were entered in DRB disciplinary dockets; and they resolved OAE motions filed under Rule 1:20-12(b).  Whether the DRB properly issued the orders, whether they were properly signed, or whether Rule 1:20-12(b) authorized the relief ordered are questions for the state disciplinary process and, ultimately, the New Jersey Supreme Court.  Plaintiffs cannot avoid *Younger* by recasting an interlocutory order entered within an attorney-disciplinary proceeding as a standalone administrative act.

13

on a *Younger* exception, but it does not change the institutional character of a proceeding conducted under the New Jersey Supreme Court's attorney-regulation system. *See Middlesex Cnty.*, 457 U.S. at 433–34.[17]

In any event, the investigations into Plaintiffs now include proceedings directly before the Supreme Court of New Jersey.  As Plaintiffs acknowledge, the OAE filed petitions directly before the New Jersey Supreme Court to temporarily suspend Plaintiffs from the practice of law because of their refusal to cooperate with their respective OAE investigations.  *See, e.g.*, TRO Mot. at 13 ("On April 2, 2026, Defendants filed a new Petition seeking Plaintiff's suspension for failure to comply with the compelled psychiatric examination and medical-records demand."); Portilla TRO at 1 ("On May 4, 2026, state officials . . . filed a petition to suspend an attorney for no reason other than her refusal to submit to an indisputably unconstitutional Order compelling an involuntary psychiatric examination and to provide 10 years of medical and mental health records.").  While this action was pending, the Supreme Court of New Jersey granted the OAE's petition and temporarily suspended Portilla from the practice of law, effective immediately and until further order.  *In re Cecile Delrose Portilla*, 2026 WL 2023319, at *1.  On this record, there can be no doubt that ongoing judicial proceedings exist.

*Second*, the ongoing disciplinary actions implicate important state interests.  As the Supreme Court made clear decades ago, "New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."  *Middlesex Cnty.*,

---

[17] Plaintiffs' reliance on *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719 (1980), is misplaced.  *Consumers Union* addressed immunity from prospective relief when state judicial officers enforce bar rules—it did not involve a request to halt ongoing disciplinary proceedings.  *See id.* at 736–37.  The case therefore does not displace *Younger*'s separate command when a federal injunction would interrupt a pending attorney-disciplinary matter.  *See* D.E. 57 at 17–19.

457 U.S. at 434; *accord Kelly v. Swartz*, No. 21-1490, 2021 WL 5083435, at *2 (D. Del. Nov. 2, 2021) (noting that a state has "an extremely important interest in ensuring that its attorneys do not suffer from a mental incapacity").

*Third*, the state process affords both Plaintiffs an adequate opportunity to present their federal objections. Plaintiffs bear the burden of showing that state procedural law bars them from presenting their federal claims. *Schall v. Joyce*, 885 F.2d 101, 107 (3d Cir. 1989). New Jersey's disciplinary rules permit an attorney to seek immediate interlocutory review from the New Jersey Supreme Court upon a showing of irreparable harm and to raise constitutional challenges after an adverse DRB decision. N.J. Ct. R. 1:20-16(f)(1), (2); *Rosellini v. Wilcox*, No. 22-2610, 2025 WL 401206, at *3 (3d Cir. Feb. 5, 2025), *cert. denied*, 223 L. Ed. 2d 557 (Jan. 20, 2026). Thus, while Plaintiffs may argue there that the OAE's record demands, examinations, DRB orders, and Rule 1:20-12(b) violate federal law, *Younger* requires this Court to first determine whether Plaintiffs have an opportunity to raise those challenges at the state level—not whether Plaintiffs are likely to prevail. *See Rosellini*, 2025 WL 401206, at *3. To the extent Plaintiffs challenge the constitutionality of any law that allows the OAE to conduct its investigations, they must first bring that claim in state court. *See Simmsparris v. Neary*, No. 10-5492, 2011 WL 2470475, at *3 (D.N.J. June 20, 2011).

The Court has considered Plaintiffs' many arguments to the contrary and finds them unconvincing. Essentially, Plaintiffs ask the Court to find that Plaintiffs do not have a forum to challenge a process they refuse to engage with. The Court will not do so. *See Cresci*, 728 F. App'x at 149 (affirming *Younger* abstention where the litigant did not attempt to present his federal claims in the related attorney discipline proceeding); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court

proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.").  Put differently, Plaintiffs cannot establish inadequacy by declining to use the available state process.

In sum, all of *Younger*'s requirements are satisfied as to both Plaintiffs.  The Court will therefore abstain unless Plaintiffs can show a recognized exception applies.

**B.    No Exception to *Younger* Applies to Either Plaintiff**

Even when *Younger* applies, federal intervention may be available upon a plaintiff's showing of bad faith, harassment, or that there are extraordinary circumstances that create a significant and immediate threat to the federal interests asserted.  *Schall*, 885 F.2d at 106.  These exceptions are to be construed narrowly.  *See Cade v. Newman*, 422 F. Supp. 2d 463, 466 (D.N.J. 2006).  The Court addresses them in turn.

*1.    Bad faith and harassment*

A proceeding is brought in bad faith when officials pursue it "without hope" of success. *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).  The exception may also apply when a proceeding was initiated with and remains animated by a retaliatory, harassing, or otherwise illegitimate motive. *Abbott*, 2021 WL 5906146, at *4.  The Court therefore focuses on the *initiation* of the proceeding. Later disputes about the merits, procedure, or outcome do not establish bad faith unless they show that the proceeding was commenced for an improper reason.  *Rosellini*, 2025 WL 401206, at *4; *Getson v. New Jersey*, 352 F. App'x 749, 753–54 (3d Cir. 2009).  Nor are allegations of bad faith or retaliation enough—a plaintiff must "allege *and prove*" that state officials are pursuing the proceedings in bad faith or are motivated by a desire to harass.  *Juidice v. Vail*, 430 U.S. 327, 338 (1977) (quotation modified) (emphasis added).

Plaintiffs principally invoke bad faith and retaliation.  They contend that the OAE opened competency inquiries to punish their criticism of the New Jersey Judiciary, the OAE, Essex County

16

judges, and alleged eCourts irregularities. They rely on the timing of the inquiries, the absence of client complaints, the use of their court filings as a basis for investigation, alleged defects in the investigations, the breadth of the medical record demands, and the participation of ethics officials who are not judges. Hawkins Reply at 1–10; Portilla TRO at 28–31; Portilla Reply at 1–9, 13–16.

Those assertions do not satisfy *Younger*'s demanding exception to establish bad faith. For starters, many of these arguments concern allegations of bad faith *during* the investigatory process, including purported procedural defects in the investigations and overbroad medical record demands. But the Court's inquiry focuses on the motivation for *initiating* the investigations. *See Getson*, 352 F. App'x at 753–54.

More importantly, Plaintiffs have not backed up their allegations with proof of bad faith. Start with Hawkins. The September 12 Letter did more than generally inform him of a competency inquiry. It identified two matters, described specific conduct that reportedly occurred in each, and explained why that conduct raised concerns about his ability to practice law. *See* September 12 Letter at 1–3. Those stated concerns—including alleged failures to understand governing procedure, appear at a conference, cite applicable law, and present coherent filings—supplied a nonfrivolous basis to investigate. The September 12 Letter also references a letter that Hawkins sent to Judge Venable in which he expressed his belief that Superior Court judges were conspiring against him. *See id.*

The Court expresses no view on the information within the September 12 Letter or whether the OAE will ultimately establish Hawkins's incapacity. However, those reports referenced in the September 12 Letter foreclose a finding, on this record, that the OAE's inquiry began without hope of success. *See Getson*, 352 F. App'x at 753 ("Whether or not [plaintiff] ultimately prevails in the

17

state administrative proceeding, there can be little question that that proceeding was not instituted by the [state official] without any expectation of success.").

Hawkins's myriad responses do not bridge that gap. He disputes the reported conduct, submits certifications from supportive clients, and emphasizes that the OAE has not produced a client complaint. Hawkins Reply at 1–3. But a competency concern need not originate with a client, and contrary evidence does not establish that the State Judiciary Defendants invented a reason to investigate Hawkins or initiated the process without any hope of success. To the contrary, the OAE process began after receiving a referral[18] that raised issues regarding Hawkins's competency to practice law. Sur-Reply at 5.

Nor does the timing of the OAE's investigation prove bad faith. Hawkins correctly notes that the OAE contacted him within weeks of his August 17 letter. While temporal proximity may *support* Hawkins's suspicion, it does not *prove* that retaliation initiated and animated the proceeding, particularly where the September 12 Letter contemporaneously identified case-specific conduct and Hawkins's accusations of a judicial conspiracy as grounds for concern about his competency. September 12 Letter at 1–3. In the Court's view, that chronology supports an equally plausible, nonretaliatory inference: the referral followed both the reported conduct in two cases and a letter whose contents reinforced the competency concerns. The Court need not decide

_____

[18] In materials submitted *ex parte* and under seal for the Court's *in camera* review, the State Judiciary Defendants clarified that the OAE received a single referral, consistent with the OAE's initial representation in the September 12 Letter. Although that clarification differs from references to multiple "referrals" in the State Judiciary Defendants' filings in this action, the discrepancy does not establish that the OAE fabricated the basis for its inquiry or initiated the proceeding without a reasonable prospect of success. The Court ordered production of the referral materials to assess Plaintiffs' allegations of bad faith; having reviewed those materials, the Court finds Plaintiffs' allegations unsubstantiated. The key point is that the OAE received a referral identifying specific concerns about Hawkins's conduct in multiple matters and thereafter opened an investigation into his fitness to practice law. Plaintiffs have not substantiated their incredibly serious allegation that the proceeding was initiated in bad faith or without hope of success.

18

which inference is correct.  It is enough that timing, without more, does not prove that retaliation initiated and animated the proceeding.

Hawkins also asserts that he made a similar allegation of judicial conspiracy twenty years ago without being investigated or punished.  D.E. 50-1 ¶ 34.  That unsupported historical comparison does not establish bad faith.  Hawkins provides no details concerning the prior statement, whether disciplinary authorities knew of it, or whether the surrounding circumstances resembled those presented here.  Regardless, the OAE did not initiate the present inquiry based solely on Hawkins's allegation that judges were conspiring against him.  The September 12 Letter also identified contemporaneous concerns regarding Hawkins's conduct and performance in two pending matters.  Accordingly, the absence of disciplinary action twenty years ago does not show that the present investigation was commenced to retaliate against Hawkins or without a reasonable prospect of success.

Portilla's inquiry also has a nonfrivolous basis.  The OAE told her that it had received a referral concerning motions she filed in two matters.  D.E. 75, Ex. C.  It explained that it was assessing whether medical circumstances impaired her ability to practice based on what it described as apparent paranoia reflected in those filings; the communication also quoted Hawkins's statement that he initially had the same concern.  *Id.*, Ex. D; Portilla Opp'n at 4–8.  Again, the Court does not decide whether those statements actually prove incapacity.  Their existence is enough to defeat the claim that the OAE could not reasonably expect the inquiry to produce relevant evidence and was initiated without hope of success.

Portilla responds that her allegations of cyber interference are true and corroborated, that an investigator misstated her account, and that the investigator declined to review evidence or interview witnesses who supported her. Portilla Reply at 1–4, 13–16.  Even assuming those

assertions for purposes of this analysis, they concern how the OAE conducted the investigation *after* it began.  They do not prove that the OAE's inquiry was *initiated* without hope of success or to suppress Portilla's viewpoint.  *See Rosellini*, 2025 WL 401206, at *4 ("Rosellini rehashes challenges to the merits of the state court sanctions orders and the conclusions reached by the DRB and New Jersey Supreme Court in the disciplinary proceedings.  Even if meritorious, these allegations are unrelated to whether the proceedings were initiated to harass him or without hope of success.").  The fact that a protected filing supplied information that prompted an inquiry likewise does not, without more, show that the inquiry targeted the filing's criticism rather than the conduct and statements it contained.[19]

Both Plaintiffs argue that the examination orders are invalid because they were signed by Timothy Ellis, the DRB's Chief Counsel, rather than a judge.  *See* Hawkins Reply at 8, 12; Portilla TRO at 16, 27–28.  Portilla further contends that this alleged absence of judicial authority evidences bad faith.  Portilla Reply at 8.  But even assuming Ellis lacked authority to sign the orders—an issue the Court does not decide—that alleged defect would concern the validity of the orders.  In other words, it would not show that the OAE *initiated* the underlying competency inquiries to retaliate against or harass Plaintiffs.  Nor would it change the judicial character of the attorney-discipline proceedings conducted under the authority of the New Jersey Supreme Court. *Middlesex*, 457 U.S. at 433–34; *Abbott*, 2021 WL 5906146, at *2–3.

Plaintiffs' remaining assertions—selective enforcement, institutional bias, ignored eCourts irregularities, and factual errors in the OAE's account—likewise challenge the investigations'

---

[19] For a similar reason, any allegations of bad faith stemming from a request for ten years of medical records are inapposite.  Again, while the parties disagree on the merits and necessity of the request, the Court does not resolve that dispute as the Court's focus is on the initiation of the OAE investigation.

fairness or merits without supplying evidence that either proceeding *began* for an illegitimate purpose. That is insufficient. *See Rosellini*, 2025 WL 401206, at *4.

Accordingly, Plaintiffs have not carried their burden to establish bad faith or harassment.

       2.     *Extraordinary circumstances*

Nor have Plaintiffs shown extraordinary circumstances. This exception requires an "extraordinarily pressing need for immediate federal equitable relief," not merely a serious dispute or a "highly unusual factual situation." *Kugler v. Helfant*, 421 U.S. 117, 124–25 (1975). "[T]he Supreme Court has found extraordinary circumstances present on only two occasions: (1) 'when a state statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it'; and (2) 'when the state administrative agency was incompetent by reason of bias to adjudicate the issues pending before it.'" *Williams v. Gov't of V.I. Bd. of Med. Exam'rs*, 360 F. App'x 297, 300 (3d Cir. 2010) (quoting *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 201 (2d Cir. 2002)).

Plaintiffs first invoke the flagrantly unconstitutional circumstance. They argue that Rule 1:20-12(b) is flagrantly unconstitutional because it is standardless and permits compelled examinations and medical disclosures without an adequate evidentiary threshold or sufficient procedural safeguards. Hawkins Reply at 8–9; Portilla TRO at 21–25, 29–30.

The Court disagrees. The Rule expressly requires the OAE Director to present evidence that "reasonably brings into question" an attorney's capacity before the DRB directs an appropriate examination to determine incapacity. N.J. Ct. R. 1:20-12(b); SAC ¶ 84. Whatever the ultimate merits of Plaintiffs' facial and as-applied challenges, that express threshold forecloses the much narrower conclusion required here: that the Rule is flagrantly and patently unconstitutional in every application. *See Younger*, 401 U.S. at 53–54.

21

Nor can Plaintiffs fit their claims into the second extraordinary exception. While "[i]t is true that '[j]udicial bias is a recognized basis for derailing *Younger* abstention, *see, e.g., Gibson v. Berryhill*, 411 U.S. 564, 577–79 (1973), . . . the claim requires more than the frenzied brandishing of a cardboard sword.'" *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 631 (E.D. Pa.) (quoting *Brooks v. N.H. Supreme Court*, 80 F.3d 633, 639–40 (1st Cir. 1996)), *aff'd*, 572 F. App'x 68 (3d Cir. 2014). Portilla invokes *Gibson* and asserts that the disciplinary process is biased or structurally defective. Portilla TRO at 29–30. But *Gibson* involved members of an adjudicative board who had a direct financial interest in the outcome of the proceedings before them. 411 U.S. at 578–79. In contrast, Plaintiffs identify no comparable structural conflict and no concrete evidence that the DRB or the New Jersey Supreme Court is incapable of adjudicating their federal objections impartially. Their allegations instead concern the conduct and motivations of OAE investigators and officials. And, even if those allegations could establish bias by particular individuals, they do not establish that the adjudicative bodies themselves are incompetent by reason of bias.

*Kugler v. Helfant* reinforces the Court's conclusion. 421 U.S. 117, 124–27 (1975). There, the plaintiff alleged that members of the New Jersey Supreme Court had coerced his grand jury testimony and that their involvement made a fair hearing anywhere in the state judiciary impossible. 421 U.S. at 125–26. The Supreme Court declined to hold that "the objectivity of the entire New Jersey court system" had been "irretrievably impaired." *Id.* at 127. Likewise, Plaintiffs' generalized allegations of institutional bias do not establish extraordinary circumstances. *See Mikhail*, 991 F. Supp. 2d at 631 (quoting *Brooks*, 80 F.3d at 640).

Plaintiffs also contend that the compelled examinations and disclosure of medical records threaten irreversible injury and therefore create an extraordinarily pressing need for immediate federal intervention. Hawkins Reply at 8–9; Portilla TRO at 29–30. But the prospect of serious

22

or irreparable injury does not, without more, establish extraordinary circumstances.  The issue is whether the state forum is incapable of fairly and fully adjudicating Plaintiffs' federal objections, thereby creating an extraordinarily pressing need for federal equitable relief.  *Kugler*, 421 U.S. at 124–25.  Plaintiffs have not made that showing.  As shown above, the state process expressly permits Plaintiffs to present their constitutional objections, including by seeking interlocutory review upon a showing of irreparable harm.  *See Rosellini*, 2025 WL 401206, at *3.

Plaintiffs' asserted injuries from compelled examinations, disclosure, and possible suspension are substantial.  But the gravity of those injuries does not itself create an extraordinary circumstance.  Plaintiffs have not shown either that Rule 1:20-12(b) is flagrantly unconstitutional in every application or that the state adjudicative bodies are incapable of fairly considering their objections.  And the state proceedings provide a forum in which Plaintiffs may raise those same constitutional objections.  *See Rosellini*, 2025 WL 401206, at *3.

\* \* \*

After reviewing the extensive record, the Court concludes that it must abstain under *Younger*.  Accordingly, Plaintiffs cannot establish the likelihood of success necessary for injunctive relief.  *See Miller v. Burns*, No. 25-14350, 2025 WL 2374143, at *3 (D.N.J. Aug. 14, 2025).  The Court, therefore, must **DENY** the Motions.[20]

---

[20] Given Plaintiffs' failure to establish success on the merits, the Court need not consider the remaining preliminary injunction factors.  *See Reilly*, 858 F.3d at 179.

## IV.    CONCLUSION

**IT IS**, on this 20th day of July, 2026,

**ORDERED** that the Hawkins Preliminary Injunction, D.E. 9, is **DENIED**; and it is further

**ORDERED** that the Hawkins TRO, D.E. 50, is **DENIED**; and it is further

**ORDERED** that the Portilla TRO, D.E. 75, is **DENIED**; and it is finally

**ORDERED** that any request for injunctive relief contained in D.Es. 97, 106, 108, 109 & 111, is **DENIED**.

_____

Evelyn Padin, U.S.D.J.